IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **GUADALUPE GOMEZ,** | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| v. | § | No.  EP-14-CV-293-ATB |
| | § | (by consent) |
| | § | |
| | § | |
| | § | |
| **CAROLYN W. COLVIN,** | § | |
| **Acting Commissioner of the** | § | |
| **Social Security Administration,**[1] | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

This is a civil action seeking judicial review of an administrative decision. Jurisdiction is predicated upon 42 U.S.C. § 405(g). Both parties having consented to trial on the merits before a United States Magistrate Judge, the case was transferred to this Court for trial and entry of judgment pursuant to 28 U.S.C. § 636(c), and Rule CV-72 and Appendix C to the Local Court Rules for the Western District of Texas.

Plaintiff appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act. For the reasons set forth below, this Court orders that the Commissioner's decision be **AFFIRMED**.

---

[1] Carolyn W. Colvin became Acting Commissioner of the Social Security Administration on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and the last sentence of 42 U.S.C. § 405(g), she is substituted as the Defendant herein.

No. EP-14-CV-293-ATB               1

## I.     PROCEDURAL HISTORY

On July 8, 2011, Plaintiff filed applications for DIB and SSI,[2] alleging a disability onset date of August 1, 2010. (R. 138). Her applications were denied initially and denied upon reconsideration. (R. 53, 59). Plaintiff filed a request for hearing, which was held on March 18, 2013. (R. 30-46, 64). The Administrative Law Judge ("ALJ") issued a decision on April 16, 2013, denying benefits. (R. 16-24). Subsequently, the Appeals Council denied review. (R. 1-3).

## II.     ISSUE

Plaintiff presents the following issue for review:

1.    Whether the ALJ erred by failing to find that Plaintiff's systemic lupus erythematosus[3] ("lupus") and carpal tunnel syndrome are medically determinable impairments. (Pl.'s Br. 2, ECF No. 22).

Plaintiff contends that the ALJ, relying on SSR 96-4p, erred in failing to find that Plaintiff's lupus was a medically determinable, severe impairment. (*Id.* at 3-4). Plaintiff further contends that the ALJ relied on inaccurate evidence to support his finding and, as a result, the ALJ's residual functional capacity ("RFC") determination is faulty because the ALJ did not

---

[2] Although the ALJ's opinion, the hearing transcript, the request for reconsideration, and Plaintiff's Brief mention Plaintiff's application for SSI, the record only contains Plaintiff's application for DIB. (*See* R. 16, 32, 59; Pl.'s Br. 1, ECF No. 22). Thus, although it is not clear to the Court whether Plaintiff applied for SSI, the Court will consider Plaintiff's applications for both DIB and SSI.

[3] Systemic lupus erythematosus is defined as

> a chronic, inflammatory, often febrile multisystemic disorder of connective tissue that proceeds through remissions and relapses; it may be either acute or insidious in onset and is characterized principally by involvement of the skin . . . , joints, kidneys, and serosal membranes. The etiology is unknown, but it may be a failure of regulatory mechanisms of the autoimmune system, since there are high levels of numerous autoantibodies against nuclear and cytoplasmic cellular components. The condition is marked by a wide variety of abnormalities, including arthritis, arthralgias, nephritis, central nervous system manifestations, pleurisy, pericarditis, leukopenia or thrombocytopenia, hemolytic anemia, elevated erythrocyte sedimentation rate, and the presence in the blood of distinctive cells called LE cells.

*See Dorland's Illustrated Medical Dictionary* 1080 (32d ed. 2012).

No. EP-14-CV-293-ATB                                2

consider limitations from Plaintiff's lupus. (*Id.*) Additionally, Plaintiff argues that the ALJ, relying on SSR 96-4p, erred in failing to find that Plaintiff's carpal tunnel syndrome was a medically determinable impairment, if not also a severe impairment. (*Id.* at 4-5). Plaintiff maintains that the objective medical evidence supports that finding and, as a result, the ALJ's RFC determination is faulty because the ALJ did not consider limitations from Plaintiff's carpal tunnel syndrome. (*Id.*) Consequently, Plaintiff seeks a reversal and remand for an award of benefits or for further administrative proceedings. (*Id.* at 5).

### III.   DISCUSSION

**A.   Standard of Review**

This Court's review is limited to a determination of whether the Commissioner's decision is supported by substantial evidence, and whether the Commissioner applied the proper legal standards in evaluating the evidence. *See* 42 U.S.C. § 405(g); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002) (citations omitted); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (citation omitted). "Substantial evidence 'is more than a mere scintilla, and less than a preponderance.'" *Masterson*, 309 F.3d at 272 (citation omitted). The Commissioner's findings will be upheld if supported by substantial evidence. *Id.* (citation omitted). A finding of no substantial evidence will be made only where there is a conspicuous absence of credible choices or no contrary medical evidence. *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (per curiam) (internal quotation marks and citation omitted).

In applying the substantial evidence standard, the court may not reweigh the evidence, try the issues *de novo*, or substitute its own judgment for the Commissioner's, even if it believes the evidence weighs against the Commissioner's decision. *Masterson*, 309 F.3d at 272 (citation

omitted). Conflicts in the evidence are for the Commissioner and not the courts to resolve. *Id.* (citation omitted); *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (citation omitted).

**B.   Evaluation Process**

The ALJ evaluates disability claims according to a sequential five-step process: 1) whether the claimant is currently engaged in substantial gainful activity; 2) whether the claimant has a severe medically determinable physical or mental impairment; 3) whether the claimant's impairment(s) meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; 4) whether the impairment prevents the claimant from performing past relevant work; and 5) whether the impairment prevents the claimant from doing any other work. 20 C.F.R. § 404.1520. The claimant bears the burden of proof at the first four steps of the analysis. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

In the present case, the ALJ found that Plaintiff had a severe impairment of a history of neuropathy.[4] (R. 18-19). The ALJ reviewed evidence of Plaintiff's allegations of lupus and carpal tunnel syndrome and determined that they were not medically determinable impairments because they did not result from objective medical signs and laboratory findings as required by SSR 96-4p. (R. 19). The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the listed impairments. (R. 19). In doing so, the ALJ determined that Plaintiff's impairment did not meet the criteria of listing

---

[4] Neuropathy is defined as

> a functional disturbance or pathological change in the peripheral nervous system, sometimes limited to noninflammatory lesions as opposed to those of neuritis; the etiology may be known or unknown. Known etiologies include complications of other diseases (such as diabetes or porphyria), or of toxicity states (such as poisoning with arsenic, isoniazid, lead, or nitrofurantoin). The terms *mononeuropathy* and *polyneuropathy* may be used to denote whether one nerve or several are involved. A number of conditions may be called either neuropathies or polyneuropathies . . . .

*Dorland's Illustrated Medical Dictionary* 1268 (32d ed. 2012).

No. EP-14-CV-293-ATB                                         4

11.01, Category of Impairments, Neurological, or any other listed impairment. (R. 19; 20 C.F.R. Part 404, Subpart P, Appendix 1). After considering the entire record, the ALJ determined that Plaintiff retained the RFC to perform a full range of medium work.[5] (R. 20-23). The ALJ then determined that Plaintiff was able to perform her past relevant work as a retail associate as she actually and generally performed that work. (R. 23). Consequently, the ALJ found that Plaintiff was not disabled through the date of the decision. (R. 23-24).

C.   **The ALJ's Determination of Plaintiff's Residual Functional Capacity**

Plaintiff contends that substantial evidence does not support the ALJ's determination that she retains the capacity to perform the full range of medium work because the ALJ failed to consider the medically determinable nature, severity, or limiting effects of Plaintiff's lupus and carpal tunnel syndrome. (Pl.'s Br. 3-5, ECF No. 22). She argues that limitations from her lupus and carpal tunnel syndrome would reduce her RFC and thus affect the determination of her disability. (*Id.*)

Residual functional capacity ("RFC") is the most an individual can still do despite his or her limitations. 20 C.F.R. §404.1545; SSR 96-8p. The responsibility to determine the plaintiff's RFC belongs to the ALJ. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In making this determination, the ALJ must consider all the record evidence and determine the plaintiff's abilities despite his or her physical and mental limitations. *Martinez*, 64 F.3d at 176. The ALJ must consider the limiting effects of an individual's impairments, even those that are non-severe, and any related symptoms. *See* 20 C.F.R. §§ 404.1529, 404.1545; SSR 96-8p. The relative weight to be given the evidence is within the ALJ's discretion. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001) (per curiam). The ALJ is not required to incorporate limitations in

---

[5] 20 C.F.R. § 404.1567(c) ("Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.").

No. EP-14-CV-293-ATB                                               5

the RFC that he or she did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) (per curiam).

It is the plaintiff's burden to establish disability and to provide or identify medical and other evidence of her impairments. *See* 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512(c). A medically determinable impairment must be established by acceptable medical sources. 20 C.F.R. § 404.1513(a). The plaintiff's own subjective complaints, without objective medical evidence of record, are insufficient to establish disability. *See* 20 C.F.R. §§ 404.1508, 404.1528, 404.1529.

D.   Analysis

   1. The ALJ's Determination at Step Two

Plaintiff contends that the ALJ's decision is not supported by substantial evidence and results from legal error. (Pl.'s Br. 2, ECF No. 22). Plaintiff argues that the ALJ erred at step two in failing to find that Plaintiff's lupus and carpal tunnel syndrome were medically determinable impairments because other evidence in the record supports her position. (*Id.* at 3-5). Plaintiff further argues that the ALJ's error at step two of the sequential evaluation process ultimately taints the ALJ's RFC determination and the finding that Plaintiff is not disabled within the meaning of the Social Security Act. (*Id.*).

The Commissioner argues that substantial evidence supports the ALJ's decision that Plaintiff does not have medically determinable impairments of lupus and carpal tunnel syndrome. (Def.'s Br. 3-7, ECF No. 23). The Commissioner further argues that the ALJ found that Plaintiff's history of neuropathy affected her feet, shoulders, arms, hands, and knees, and caused constant pain in her hands and feet. (*Id.* at 3, citing R. 18-21). The Commissioner contends that Plaintiff did not provide evidence establishing medically determinable impairments

of lupus and carpal tunnel syndrome and that Plaintiff has to demonstrate functional limitations as a result of her impairments in order to show reversible error. (*Id.* at 3-4, citing *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983) (per curiam); *Vereen v. Barnhart*, No. SA 05 CA 0010 XR NN, 2005 WL 3388136, at *5 (W.D. Tex. Nov. 16, 2005)).

The finding of an impairment must be demonstrated by medically acceptable clinical and laboratory diagnostic findings. 42 U.S.C. § 423(d)(3), (d)(5); *Randall v. Astrue*, 570 F.3d 651, 657 (5th Cir. 2009); *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). In the absence of any objective medical diagnostic findings, the agency does not possess the discretion to base a finding of impairment on the claimant's subjective complaints. 20 C.F.R. 404.1508. Under the regulations, an impairment is medically determinable if it "result[s] from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." 20 C.F.R. § 416.908. This evidence includes observations made by the physician during physical examinations and is not limited solely to laboratory findings or test results. *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000).

At step two, the ALJ found that because there were no objective medical signs and laboratory findings supporting Plaintiff's allegations of lupus and carpal tunnel syndrome as required under SSR 96-4p, they were not considered medically determinable impairments. (R. 19). In determining that Plaintiff's alleged lupus was not a medically determinable impairment, the ALJ noted that the Medical Source Statement ("MSS") completed by Nurse Wanda Sanchez[6]

---

[6] As a nurse practitioner and registered nurse, Sanchez is not considered an "acceptable" medical source under the regulations. *See* SSR 06-03p; 20 C.F.R. § 404.1513(d); *see also Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir.1991) (recognizing that the regulations accord less weight to sources other than medical doctors).

indicated that Plaintiff's vision was impacted by lupus. (R. 19, citing R. 266). The ALJ further noted that treatment notes from Montwood Family Medical Center referenced a history of lupus. (R. 19, citing R. 269-392). The ALJ found, however, that "there is no testing of record that confirms lupus, and [Plaintiff] is not prescribed Plaquenil." (R. 19). Additionally, the ALJ indicated that a January 2009 arthritis panel, which tested for rheumatoid arthritis factor[7] and antinuclear antibodies,[8] was within normal limits. (R. 19, citing R. 219, 229). The ALJ also relied upon the consultative examination performed by Dr. Enrique Porras which stated that "[t]he diagnosis of lupus is clinical and requires a minimum set of criteria. Even with the opinion of her primary doctor the diagnosis and fair clinical presentation, laboratories are not available and the diagnosis remains presumptive until confirmed by the specialist." (R. 19, citing R. 236). The ALJ further relied upon the Physical Residual Functional Capacity Assessment performed by Dr. Manda Waldrep, the state agency medical consultant, who opined

---

[7] Rheumatoid factor is defined as

> antibodies directed against antigenic determinants, i.e., GM in the Fc region of the IgG class of immunoglobulins; these are found in the serum of about [eighty] [percent] of persons with classical or definite rheumatoid arthritis, but only about [twenty] [percent] of those with juvenile rheumatoid arthritis. Rheumatoid factors may be of the IgM, IgG, or IgA classes of immunoglobulins, although serologic tests measure only IgM. Rheumatoid factors also occur in other connective tissue diseases and infectious diseases, such as Sjögren Syndrome, systemic lupus erythematosus, sarcoidosis, subacute bacterial endocarditis, hepatitis A, and leprosy.

*Dorland's Illustrated Medical Dictionary* 676 (32d ed. 2012).

[8] Antinuclear antibodies are defined as

> antibodies directed against nuclear antigens; ones against a variety of different antigens are almost invariably found in systemic lupus erythematosus and are frequently found in rheumatoid arthritis, scleroderma (systemic sclerosis), Sjögren Syndrome, and mixed connective tissue disease. Antinuclear antibodies may be detected by immunofluorescent staining. Serologic tests are also used to determine antibody titers against specific antigens.

*Dorland's Illustrated Medical Dictionary* 101 (32d ed. 2012).

that a medically determinable impairment of lupus was not established. (R. 19, citing R. 247). The ALJ accorded significant weight to Dr. Waldrep's RFC determination. (R. 19). As to Plaintiff's carpal tunnel syndrome, the ALJ found that there were no objective findings to establish the existence of Plaintiff's carpal tunnel syndrome as a medically determinable impairment. (R. 19). The ALJ relied upon Dr. Porras' examination which found that, although Plaintiff's grip strength was diminished, range of motion in her wrists and hands was intact bilaterally and Tinel's sign[9] and Phalen's sign[10] were negative. (R. 19, citing R. 234).

A review of the record evidence indicates that there is substantial evidence to support the ALJ's determination that Plaintiff's lupus and carpal tunnel syndrome were not medically determinable impairments. Insofar as other laboratory findings demonstrate some signs of either lupus or carpal tunnel syndrome, the Court finds that any error by the ALJ at this step of the analysis is harmless and does not require remand because the ALJ proceeded to later steps of the analysis and considered Plaintiff's lupus and carpal tunnel syndrome when determining Plaintiff's RFC. *See Herrera v. Astrue*, 406 F. App'x 899, 903 (5th Cir. 2010) (per curiam) (unpublished) (holding that the ALJ's error at step two did not warrant remand when the ALJ proceeded to further steps of the sequential evaluation process and considered impairments at later steps); *Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987) (stating that the case did not turn on finding at step two when the ALJ proceeded with the sequential evaluation process); *Earl v. Colvin*, Civ. A. No. 3:13-CV-0382-BH, 2014 WL 1281452, at *9 (N.D. Tex. Mar. 28, 2014) ("Nevertheless, courts in this Circuit have held that where the ALJ fails to specifically determine

---

[9] Tinel's sign is defined as "a tingling sensation in the distal end of a limb when percussion is made over the site of a divided nerve. It indicates a partial lesion or the beginning regeneration of the nerve." *Dorland's Illustrated Medical Dictionary* 1716 (32d ed. 2012).

[10] Phalen's sign is defined as an "appearance of numbness or paresthesias within 30 to 60 seconds during the Phalen test, a positive sign for carpal tunnel syndrome." *Dorland's Illustrated Medical Dictionary* 1714 (32d ed. 2012).

the severity of claimant's impairments at step two, remand is not required where the ALJ proceeds to the remaining steps of the disability analysis and considers the alleged impairment's—or its symptoms—effects on the claimant's ability to work at those steps."); *Abra v. Colvin*, No. 3:12-CV-1632-BN, 2013 WL 5178151, at *4 (N.D. Tex. Sept. 16, 2013) ("Remand is not warranted when, even where the ALJ did not explicitly determine the severity of certain impairments, the ALJ proceeded to later steps of the analysis."); *Hulen v. Colvin*, No. EP-12-CV-178-RFC, 2013 WL 4788816, at *3 (W.D. Tex. Sept. 6, 2013) (holding that, although the ALJ did not make a severity determination at step two with regard to the plaintiff's back impairment, the error was harmless because the plaintiff did not make an argument at step three and the ALJ considered the impairment at step four); *see also Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (per curiam) ("Procedural perfection in administrative proceedings is not required."). The Court also finds that even if the ALJ made an explicit determination and found that Plaintiff's alleged lupus and carpal tunnel syndrome were not severe impairments, "any error by the ALJ in not following the procedures set out in *Stone* is harmless" and remand is not required where substantial evidence supports the ALJ's decision. *Taylor v. Astrue*, 706 F.3d 600 (5th Cir. 2012) (per curiam). As discussed below, substantial evidence supports the ALJ's decision, thus, any error is harmless.

### 2. The ALJ's Determination at Step Four

In reviewing a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs "four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability;

and (4) [the claimant's] age, education and work history." *See Martinez*, 64 F.3d at 174 (citation omitted).

### a. The Parties' Arguments Regarding Plaintiff's Lupus

In regard to her lupus, Plaintiff alleges that Dr. Porras and Dr. Waldrep failed to consider laboratory findings from Montwood Family Medical Center dated May 26, 2011,[11] when forming their opinions. (Pl.'s Br. 4, ECF No. 22, citing R. 232-36, 245-52). Plaintiff contends that the ALJ also failed to consider laboratory findings other than the January 2009 arthritis panel. (*Id.*) Plaintiff further contends that her prescriptions for Meloxicam and Lyrica are used to treat lupus. (*Id.*, citing R. 197). Thus, Plaintiff argues that by failing to include limitations for Plaintiff's lupus, the ALJ's RFC determination was not supported by substantial evidence and tainted the remaining steps in the sequential evaluation. (*Id.*)

The Commissioner contends that the ALJ properly relied on the opinions of Dr. Porras and Dr. Waldrep, because both doctors were unable to review the laboratory findings Plaintiff cited showing possible signs of lupus due to Plaintiff's failure to provide those documents until February 26, 2013, well after both doctors performed their examinations. (Def.'s Br. 4-5, ECF No. 23, citing R. 232, 252, 268-69). The Commissioner explains that both the ALJ and Plaintiff's hearing attorney requested medical records from Montwood Family Medical Center but they had problems obtaining those records. (*Id.* at 5, citing R. 35). The Commissioner thus argues that because Plaintiff had the burden to prove that she was disabled, her failure to timely provide her own medical records cannot be attributed to the ALJ. (*Id.*)

---

[11] The Court notes that the May 26, 2011 date mentioned in Plaintiff's Brief was the date that the report was generated but actually the tests were performed and the report is dated April 12, 2011. (Pl.'s Br. 4, ECF No. 22; R. 285). Moreover, it appears to the Court that another report, dated April 25, 2011, contains the results from the tests performed on April 12, 2011. (R. 285, 291).

No. EP-14-CV-293-ATB                               11

The Commissioner also contends that the ALJ considered all of Plaintiff's laboratory findings from Montwood Family Medical Center because he cited to the exhibit containing those records. (*Id.*, citing R. 21, 268-392). Additionally, the Commissioner argues that Plaintiff's hearing attorney conceded that these medical records were in fact not detailed and that the ALJ found that the records did not contain anything remarkable. (*Id.*, citing R. 37). The Commissioner maintains that the ALJ noted that the records contained few objective findings and that Plaintiff did not make any subjective complaints during her May 18, 2011 visit with Dr. Ajai Agarwal.[12] (*Id.*, citing R. 21, 331). Thus, the Commissioner argues that Plaintiff's lack of subjective complaints during the same month that she alleged that a laboratory test found possible signs of lupus suggests that Plaintiff had no functional limitations beyond those included in the ALJ's RFC determination. (*Id.*, citing *Hames*, 707 F.2d at 165).

The Commissioner argues that the ALJ properly noted that Plaintiff was prescribed Lyrica and Meloxicam, that her prescription for Lyrica was used to treat neuropathy, that Plaintiff was not prescribed Plaquenil for lupus, and that she had not seen a specialist regarding her lupus. (*Id.* at 5-6, citing R. 21-22, 231-27, 352-53). The Commissioner contends that the objective medical evidence supports the ALJ's determination that she was prescribed Lyrica to treat neuropathy and not lupus, and that Plaintiff cites no evidence to support the proposition that her prescription for Meloxicam was used to treat lupus. (*Id.* at 6, citing R. 40, 220, 235). The Commissioner further contends that the ALJ did not err in noting Plaintiff's lack of a prescription for Plaquenil. (*Id.*) Finally, the Commissioner also argues that the ALJ's consideration of evidence that Plaintiff had not seen a specialist was proper because 20 C.F.R. §

---

[12] The Court is under the impression that the Commissioner cited this report to rebut the argument made by Plaintiff that certain May 2011 records showed that Plaintiff had signs of lupus. As mentioned in the footnote above, those records were from April 2011, and therefore, the Court notes that Plaintiff made no subjective complaints during her April 25, 2011 visit with Dr. Agarwal. (R. 320-22).

404.1529(c)(3)(v) and 20 C.F.R. § 416.929(c)(3)(v) permit the ALJ to consider that as a factor. (*Id.*)

### b.  The Parties' Arguments Regarding Plaintiff's Carpal Tunnel Syndrome

Plaintiff alleges that she suffers from carpal tunnel syndrome and cites to her February 2009 medical records which demonstrated findings of positive Phalen's sign and hand numbness and tingling in the median nerve distribution. (Pl.'s Br. 5, ECF No. 22; R. 219). Plaintiff further alleges that Dr. Porras diagnosed Plaintiff with "[p]aresthesia and weakness of hands suggestive of carpal tunnel syndrome." (*Id.*, citing R. 236). Thus, Plaintiff argues that by failing to include limitations for Plaintiff's carpal tunnel syndrome, the ALJ's RFC determination was not supported by substantial evidence. (*Id.*)

The Commissioner argues that the ALJ properly considered Dr. Porras' examination showing diminished grip strength, an intact range of motion in Plaintiff's wrists and hands, and negative results for Tinel's sign and Phalen's sign. (Def.'s Br. 6, ECF No. 23, citing R. 22, 231-37). The Commissioner contends that the ALJ properly relied on the opinions of Dr. Waldrep and Dr. Teresa Fox[13] in determining that Plaintiff could perform a full range of medium work. (*Id.* at 6, citing R. 23, 245-52, 261-62). The Commissioner further contends that the ALJ properly accorded great weight to the opinions of Dr. Waldrep and Dr. Fox. (*Id.*, citing R. 23). The Commissioner maintains that Plaintiff concedes that Dr. Porras' September 20, 2011 examination revealed normal findings. (*Id.*, citing Pl.'s Br. 5, ECF No. 22; R. 19, 234). The Commissioner also claims that Plaintiff's reliance on her February 2009 medical records predates the relevant period because she did not allege a disability until August 2010. (*Id.* at 6-7, citing R. 137). Even if those findings supported further limitations, the Commissioner contends that Plaintiff's ability to work as a retail associate through August 1, 2010, provides further

---

[13] Dr. Fox completed the Case Assessment Form affirming Dr. Waldrep's RFC determination.

support for the ALJ's RFC determination.  (*Id.* at 7, citing R. 162; *Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995); 20 C.F.R. §§ 404.1520(b), 416.920(b)).  Therefore, the Commissioner argues that the medical evidence provides substantial evidence supporting the ALJ's RFC assessment.  (*Id.*)

### c. The Court's Analysis

A review of the record evidence indicates that there is substantial evidence to support the ALJ's conclusion that Plaintiff retained the capacity to perform the full range of medium work.  Furthermore, the record clearly demonstrates that the ALJ did address Plaintiff's lupus and carpal tunnel syndrome in determining Plaintiff's RFC.

The Court finds that Plaintiff's treatment notes from Montwood Family Medical Center provide substantial evidence supporting the ALJ's RFC determination because they reveal few objective findings and lack consistent complaints from Plaintiff regarding her alleged symptoms.  Moreover, the records do not reveal any limitations imposed by the doctors or nurses that examined Plaintiff. (R. 268-392).   The only objective finding the Court can glean from these records, indicating a possibility of lupus, is a laboratory test from April 12, 2011, that found negative rheumatoid factor but showed positive antinuclear antibody, high antinuclear antibody titer,[14] and high DNA (DS) antibody.[15]  (R. 285, 291).  The remaining records, however, reveal few subjective complaints and, therefore, the Court finds that no objective medical findings support any limitations from Plaintiff's lupus or carpal tunnel syndrome.

---

[14] Titer is defined as "the quantity of a substance required to produce a reaction with a given volume of another substance, or the amount of one substance required to correspond with a given amount of another substance." *Dorland's Illustrated Medical Dictionary* 1932 (32d ed. 2012).

[15] Anti-dsDNA is defined as "a type of antinuclear antibody specific for double-stranded DNA, found in the serum of patients with systemic lupus erythematosus." *Dorland's Illustrated Medical Dictionary* 100 (32d ed. 2012).

While Plaintiff's records from Montwood Family Medical Center indicate diagnoses for lupus, none indicate diagnoses for carpal tunnel syndrome and the objective findings from the examinations are normal. (R. 314-392). A number of examinations[16] contained no subjective complaints from Plaintiff about lupus or carpal tunnel syndrome and the objective findings from those examinations revealed that Plaintiff had "[n]o major bone, joint, tendon, or muscle changes" and "[n]o major deficits of coordination or sensation." (R. 314-25, 331-42, 350-56, 364-70, 379-90). Furthermore, while additional examinations[17] contained subjective complaints of leg, hand, foot, knee, and joint pain, the reports from these examinations contained no complaints specific to lupus or carpal tunnel syndrome and contained the same objective findings as the above-mentioned reports where Plaintiff made no subjective complaints. (R. 343-49, 357-63, 371-78). Thus, the Court finds that these records provide further evidence supporting the ALJ's RFC determination.

The Court finds that substantial evidence supports the ALJ's determination that Plaintiff was never prescribed Lyrica and Meloxicam for the treatment of lupus. While the Court notes that there are several instances in the medical records from Montwood Family Medical Center in which Plaintiff was diagnosed with lupus and prescribed Lyrica or Meloxicam or diagnosed with lupus and not prescribed Lyrica or Meloxicam[18] and those records do not specifically indicate

---

[16] The examination dates are April 11, 2011, April 25, 2011, May 18, 2011, May 31, 2011, September 19, 2011, April 4, 2012, August 31, 2012, and there is one undated examination. (R. 314-25, 331-42, 350-56, 364-70, 379-90).

[17] The examination dates are June 28, 2011, November 17, 2011, and July 30, 2012. (R. 343-49, 357-63, 371-78).

[18] Plaintiff's examinations from April 25, 2011, September 19, 2011, November 17, 2011, and April 4, 2012, indicate that Plaintiff was diagnosed with lupus and was prescribed Lyrica and Meloxicam, however, examinations from May 18, 2011, June 28, 2011, July 30, 2012, August 31, 2012, indicate that Plaintiff was diagnosed with lupus and was not prescribed Lyrica and Meloxicam. (R. 321-22, 332-33, 344-45, 352-53, 359-60, 366-67, 373-74, 381-82). One undated report indicates that Plaintiff was diagnosed with lupus and prescribed Lyrica but not Meloxicam. (R. 388-89).

No. EP-14-CV-293-ATB                                      15

why those medications were prescribed. According to an examination on February 20, 2009, Plaintiff was prescribed Lyrica for the treatment of neuropathy by Dr. Charina C. Yango.[19] (R. 220). Additionally, although some of Plaintiff's other medications specified that they were prescribed to treat Plaintiff's arthritis, none of the records indicate why Plaintiff was prescribed Lyrica and Meloxicam. (R. 314-392). Moreover, the Court finds that the ALJ properly noted that Plaintiff did not take Plaquenil to treat lupus because her medical records do not indicate a prescription for that medication. (R. 268-392).

The Court finds that Dr. Porras' examination provides substantial evidence supporting the ALJ's RFC determination. On September 20, 2011, Plaintiff presented to Dr. Porras with allegations of high blood pressure, headaches, lupus, and vision problems, and her chief complaint was multiple body aches. (R. 232). Dr. Porras observed that Plaintiff's range of motion in her cervical spine, shoulders, elbows, wrists and hands, thumbs, hips, and knees were intact, that she had decreased motor strength of 3.5/5 in her wrists, hands, and thumbs bilaterally, and that Tinel's sign and Phalen's sign were negative. (R. 234-35). Dr. Porras also observed that Plaintiff had unremarkable posture, that her gait was normal, that she performed tandem walking normally, that her toe walking was limited by metatarsalgia,[20] that she was limited in squatting, that she fairly performed kneeling, that her hopping was impaired, and that her climbing was fair. (R. 235). Dr. Porras reviewed Plaintiff's February 2009 medical records, which described wrist stiffness and numbing in the left foot and toes. (R. 218, 235). Dr. Porras indicated that those records demonstrated that Plaintiff was diagnosed with anemia, neuropathy, carpal tunnel syndrome, and allergic rhinitis. (R. 219, 235). Dr. Porras noted that Plaintiff was

---

[19] Dr. Yango works at Miami Beach Community Health. (R. 213, 218-220).

[20] Metatarsalgia is defined as "pain and tenderness in the metatarsal region." *Dorland's Illustrated Medical Dictionary* 1145 (32d ed. 2012).

prescribed Lyrica to treat neuropathy and a splint at night to treat carpal tunnel syndrome. (R. 219, 235). Dr. Porras diagnosed Plaintiff with several conditions, including, among other things, "[p]olyarthralgia and diffuse myalgia with a presumptive diagnosis of systemic lupus erythematosus" and "[p]arethesia and weakness of hands suggestive of carpal tunnel syndrome." (R. 236). Dr. Porras further stated that "[t]he diagnosis of lupus is clinical and requires a minimum set of criteria. Even with the opinion of her primary doctor the diagnosis and fair clinical presentation, laboratories are not available and the diagnosis remains presumptive until confirmed by the specialist." (R. 236).

The Court finds that the ALJ properly considered Dr. Porras' findings when making his RFC determination. (R. 22). Although Dr. Porras reviewed Plaintiff's February 2009 medical records and he presumptively diagnosed Plaintiff with lupus and a condition "suggestive of carpal tunnel syndrome," Dr. Porras included no limitations stemming from these conditions. The Court also finds that Plaintiff's ability to work from February 2009 through August 1, 2010, supports the ALJ's RFC determination since any limitations found since February 2009 had not been disabling. *See Vaughan*, 58 F.3d at 131 (holding that the plaintiff's ability to work after suffering from ailments that she claimed were disabling provides substantial evidence supporting the ALJ's RFC determination); 20 C.F.R. §§ 404.1520(b), 416.920(b)).

The Court finds that Dr. Waldrep's RFC determination provides further substantial evidence supporting the ALJ's RFC determination. *See Brown v. Astrue*, Civ. A. No. 3:08-CV-0255-D, 2009 WL 64117, at *4 (N.D. Tex. Jan. 12, 2009) (citations omitted); *Barrington v. Barnhart*, Civ. A. No. SA02CA0993RF, 2005 WL 2137911, at *7 (W.D. Tex. July 13, 2005). On November 2, 2011, a Physical Residual Functional Capacity Assessment form was completed by Dr. Waldrep. (R. 245-52). Dr. Waldrep determined that Plaintiff was able to perform

medium work with no postural, manipulative, visual, communicative, or environmental limitations. (R. 246-49). In making this determination, Dr. Waldrep considered Plaintiff's medical records from February 2009, Plaintiff's statements, and Dr. Porras' examination. Dr. Waldrep concluded that a "[medically determinable impairment] of lupus is not established." (R. 247). Dr. Waldrep also concluded that Plaintiff had diagnoses of neuropathy and carpal tunnel syndrome in the past but a "[medically determinable impairment] is not established to support the findings at the [consultative examination]." (R. 247). The Court notes that Dr. Waldrep's RFC determination was affirmed by Dr. Fox. (R. 261-62).

The Court also finds that the ALJ properly rejected the MSS provided by Nurse Sanchez. On February 22, 2013, Nurse Sanchez completed an MSS which included substantial limitations. (R. 264-67). Nurse Sanchez determined that Plaintiff had exertional limitations in her ability to lift and/or carry, stand and/or walk, sit, and push and/or pull. (R. 264-65). Nurse Sanchez stated that Plaintiff could lift and/or carry less than one pound at any time for three seconds, that Plaintiff could stand and/or walk less than two hours in an eight hour workday, that Plaintiff must alternate between sitting and standing, and that Plaintiff was limited in her ability to push and/or pull in her upper and lower extremities. (R. 264-65). Nurse Sanchez asserted that Plaintiff's osteoarthritis, arthralgia, and myalgia severely limited Plaintiff in those areas. (R. 265). Nurse Sanchez also found that Plaintiff could never climb, kneel, crouch, crawl, or stoop, and that she could frequently balance. (R. 265). Nurse Sanchez explained that due to osteoarthritis to hands, joints, and spine, and myalgia and arthralgia, Plaintiff could not perform these postural activities. (R. 265). In regard to Plaintiff's manipulative limitations, Nurse Sanchez found that Plaintiff was unlimited in feeling but could only occasionally reach, handle, and finger, which was attributed to Plaintiff's joint pain from osteoarthritis. (R. 266). Nurse

Sanchez found that Plaintiff needed glasses and her vision was impacted by lupus. (R. 266). Finally, Nurse Sanchez stated that Plaintiff was limited by temperature extremes, dust, vibration, humidity/wetness, hazards, and fumes, odors, chemicals, and gases because of her osteoarthritis, joint edema, myalgia, and lupus. (R. 267).

The Court finds that the ALJ was free to assign no weight to Nurse Sanchez's opinion. First, as noted by the ALJ, Nurse Sanchez is not considered an acceptable medical source under the regulations. *See* SSR 06-03p; 20 C.F.R. § 404.1513(d); *see also Griego*, 940 F.2d at 945 (recognizing that the regulations accord less weight to sources other than medical doctors). Moreover, good cause existed to support the ALJ's determination that Nurse Sanchez's opinion is inconsistent with the record. Even if Nurse Sanchez was a proper medical source, the ALJ is free to assign "little or no weight" to the opinion of any physician for good cause. *Newton v. Apfel*, 209 F.3d 448, 455-56 (5th Cir. 2000) (citations omitted). Good cause exists where statements are "brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence." *Perez v. Barnhart*, 415 F.3d 457, 466 (5th Cir. 2005) (emphasis omitted). Here, the ALJ determined that Nurse Sanchez's MSS contained extreme limitations that were unsupported by the record and inconsistent with Dr. Porras' examination. (R. 23). A review of the record demonstrates that Nurse Sanchez's assignment of extreme physical limitations does not coincide with the rest of the medical evidence. Nurse Sanchez includes no limitations as a result of Plaintiff's alleged carpal tunnel syndrome. (R. 264-67). Moreover, the only issues Nurse Sanchez attributes to Plaintiff's lupus are vision and environmental limitations which are unsupported by the record evidence. (R. 264-67). Therefore, the Court finds that good cause existed for assigning Nurse Sanchez's opinion no weight.

In conclusion, the Court finds that the ALJ's RFC determination is supported by substantial evidence through her records from Montwood Family Medical Center, her records from Dr. Yango, the consultative examination, the state agency consultant's RFC determination, and the ALJ's decision to assign no weight to Nurse Sanchez's MSS.  The Court further finds that Plaintiff's subjective complaints are insufficient to support her claims of disability and that Plaintiff has failed to submit any evidence showing that her lupus and carpal tunnel syndrome caused any functional limitations beyond those included in the ALJ's RFC determination.

### IV.    CONCLUSION

A review of the record supports the ALJ's findings and RFC determination. Consequently, the Court finds that substantial evidence supports the Commissioner's decision. Based on the foregoing, the Court **HEREBY ORDERS** that the decision of the Commissioner be **AFFIRMED** consistent with this opinion.

**SIGNED** and **ENTERED** this 2nd day of July, 2015.

_____
**ANNE T. BERTON**
**U.S. MAGISTRATE JUDGE**